**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
DENVER DIVISION**

| | |
|---|---|
| CARYN SUTHERLAND, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES UNDER THE TELEPHONE CONSUMER PROTECTION ACT AND OTHER EQUITABLE RELIEF** |
| MEDICREDIT, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Caryn Sutherland ("Caryn"), is a natural person who resided in Littleton, Colorado, at all times relevant to this action.

2. Defendant, Medicredit, Inc. ("Medicredit"), is a Missouri corporation that maintained its principal place of business in Columbia, Missouri, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over this matter as it arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

5. On July 23, 2015, Medicredit began calling Caryn on Caryn's cellular phone ending in -6260 in connection with the collection of a debt using an Automatic Telephone Dialing System ("ATDS").

6. Caryn believes Medicredit called her over 40 times in an effort to collect the debt.

7. When Caryn would answer the calls, she would hear a short pause before being able to speak to a live representative from Medicredit.

8. When Caryn would answer the calls, she would hear a clicking sound before being able to speak to a live representative from Medicredit.

9. Shortly after the calls began, Caryn communicated her desire that Medicredit cease calling her because Medicredit called Caryn so much she felt harassed.

10. Despite this communication, Medicredit continued to call Caryn on her cellular phone with impunity.

11. On more than one occasion, Medicredit called Caryn on her cellular phone multiple times a day.

12. Medicredit's collection efforts, including but not limited to its telephone calls, caused Caryn emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

13. Medicredit's collection efforts also intruded upon Caryn's privacy.

14. In addition, each time Medicredit placed a telephone call to Caryn, Medicredit occupied Caryn's telephone number such that Caryn was unable to receive other phone calls at that telephone number while Medicredit was calling her.

15. Medicredit's telephone calls also forced Caryn to lose time by having to tend to Medicredit's unwanted calls.

## APPLICABLE LAW

16.  Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

17.  The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

18.  "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls.  The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers."  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

19.  A telephone dialing system with predictive dialer functionality is an ATDS within the meaning of the TCPA.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules*

*& Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

20. Medicredit used a telephone dialing system with predictive dialer functionality to place calls to Caryn on her cellular telephone.

21. The TCPA provides, in part:

> (b)      RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
>> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>>
>>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>>
>> * * *
>>
>>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

22. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7999-8000, ¶ 72-73 (2015).

23. Caryn was the "called party" in each telephone call Medicredit placed to Caryn's cellular telephone.

24. The "called party" may revoke any prior consent to be called on his or her cellular phone in any reasonable manner. *In the Matter of Rules and Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7993, ¶ 55 (2015); *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1345 (N.D. Ga. 2015) ("The unwillingness [to receive calls] 'may be manifested to the actor by any words or conduct inconsistent with the continued consent.'").

### *Willful Violations of the TCPA*

25.   The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

26.   The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

27.   In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc.* 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

28.   Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

29.   In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the subscriber being called has provided his or her express consent to be called.  *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla 2012); *aff'd* 755 F.3d 1265 (11th Cir. 2014).

## COUNT ONE

### Violation of the Telephone Consumer Protection Act

30.   Caryn re-alleges and incorporates by reference Paragraphs 5 through 29 above as if fully set forth herein.

31.   Medicredit violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Caryn on her cellular telephone without Caryn's prior express consent or after such consent had been revoked.

32.   In addition, because Medicredit (a) voluntarily placed telephone calls to Caryn's cellular telephone number in violation of the TCPA, and (b) failed to place intermittent live verification calls to ensure that Medicredit had Caryn's express consent to be called using an ATDS, Medicredit's violations were willfully and knowingly made.

## JURY DEMAND

33.   Caryn demands a trial by jury.

## PRAYER FOR RELIEF

34.   Caryn prays for the following relief:

   a.   An order enjoining Medicredit from placing further telephone calls to Caryn's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

    b.  Judgment against Medicredit for statutory damages pursuant to 47 U.S.C.

§ 227(b)(3) for each and every call Medicredit made in violation of the TCPA.

    c.  For such other legal and/or equitable relief as the Court deems appropriate.


RESPECTFULLY SUBMITTED,


Date: June 9, 2017          By:____/s/ Jeffrey S. Hyslip_____
Jeffrey S. Hyslip, Esq.
Hyslip & Taylor, LLC LPA
1100 W. Cermak Rd., Suite B410
Chicago, IL  60608
Phone: 312-380-6110
Fax: 312-361-3509
Email: jeffrey@lifetimedebtsolutions.com
*Attorney for Plaintiff, Caryn Sutherland*